and Davis. All right. So, Mr. Adams, you're going to go first on behalf of Mr. Bynum. And you reserved two minutes for rebuttal, so that gives you four minutes now, I think, if I'm doing the math right. Yes, Your Honor. Okay. Thank you. May it please the Court. The district court erred when it instructed the jury as to conscious avoidance. Under the two prongs necessary to give the instruction, we're going to focus on the second part, whether or not there was a sufficient factual predicate for the court to give that instruction. And based on the evidence, given in the light most favorable to the government, Mr. Bynum's subjective view, or subjective understanding, was that these facts that the government says raise the red flag were, in fact, not so unusual. Such facts include whether or not Mr. Williams, who created these fake invoices, had used his own personal Gmail accounts. Other factors included whether or not Mr. Bynum could recall the names of certain health care providers that he went to during the course. Did Mr. Bynum pay Mr. Williams $30,000 for the invoices? Yes, Your Honor. Is that not a red flag? Judge, I think . . . Because that was, in essence, a kickback. That was the government's argument, Judge. And I believe based on, again, Mr. Bynum's subjective understanding . . . The jury apparently found that it was a kickback. They did for count one, yes, Your Honor. Yes. So, for count two, I'm sorry. The question is, isn't that a big, a huge red flag? I think based on Mr. Bynum's subjective understanding, it was not. Mr. Bynum went into the NBA when he was a teenager. He had people handle all of his affairs for him for almost a decade. So it's not out of the ordinary that Mr. Williams would come up and say, if you pay me the $30,000 for taxes and for doctor's fees, I'll handle that for you. Based on Mr. Bynum's life experience, Mr. Bynum thought that was a subjectively reasonable thing to do, to pay taxes on the $200,000 he was getting from the health care. So it wasn't a red flag that the invoices were for exactly $200,000 on the nose to the penny? Judge, I don't believe that in itself was a red flag either. And then the invoices are not coming from the rehab center, but coming instead from a former player like himself? Mr. Williams did send Mr. Bynum these invoices. And there was evidence at trial about the painstaking efforts that Mr. Williams took to make these invoices look legitimate, look like they were coming from sports rehab facilities. And the dates were for dates when Mr. Bynum was residing in a different state. Is that also a red flag? That was a fact and evidence. Mr. Bynum did – I mean, these are all facts and evidence, as you could argue to the jury that they weren't enough to show his knowledge. But aren't these the kind of red flags that ought to put somebody on notice that, hmm, something fishy going on here? Judge, I don't believe that they're – they raise the level that the Second Circuit has said caused someone to believe that there's a high probability that there's something fishy going on. Mr. Bynum went to several different rehab facilities during the time of his NBA career. He does not recall the exact dates he went to each place. He did glance at the invoices. He did look at them. He said he looked at them on his phone. He reviewed them. And any questions he had, he did ask Mr. Williams. So I think he asked questions when he thought there was something amiss, and it satisfied his – How about the fact that he kept his financial advisor off of the calls that he had when he was discussing these submissions? He did. When he previously – I mean, there was evidence that he previously included his financial advisor in calls of this sort. He did on other matters. He did include his financial advisor. In this case, Mr. Williams told him he would handle – So the argument is that given all these facts which are in evidence, that wasn't a sufficient factual basis to give the instruction at all? Correct, Your Honor. Is that the argument? Yes, Your Honor. Based on, again, based on Mr. Bynum's subjective understanding based on his life experiences. The jury could have found – reasonably found that these were indeed – that these should have put him on notice, right? They could have, Judge, if the instruction was – And if the jury could have made that finding, then wasn't it proper for the district judge to charge the jury on conscious avoidance? Judge, I think it's two separate issues. I see I've gone past my time. Do you want me to answer the question? No, answer the question. Thank you, Your Honor. I believe the fact that these factors that the Court points out were not enough to give the instruction, again, based on Mr. Bynum's subjective understanding of those facts as they were presented to him. Thank you. I'll save the rest of the time for my rebuttal if there's no further questions. Okay. Well, thank you very much, Mr. Appleton. Thank you. And Mr. White. And Mr. White, you reserve one minute for rebuttal, so that gives you, I guess, five now, right? Yes, Your Honor. May it please the Court, my name is Brendan White. I represent Appellant Ronald Glenn Davis. I would like to try to address two issues on appeal here, namely the Court's preclusion and sustaining of objections with respect to evidence regarding Mr. Davis' wherewithal to understand the wrongfulness of the scheme here, and secondly, the substantive and procedural reasonableness of the sentence. I'll start with the evidence issue. When you boil this case down, it was clearly the subject of some of the arguments that just took place, but the government's position is that, look, documents were submitted. There were some things that likely would have stood out to many of us, most of us, I'm sure, as being pretty clear red flags that there was something going on here. However, as counsel attempted to point out, using perhaps impolitic language, but Mr. Davis lacked the intellectual wherewithal to understand. He was not smart enough to formulate an intent. Correct, or as counsel stated. There was another word used which I won't use. Thank you, Your Honor. The judge deferred making a decision on the admission of such evidence until it was sought to be admitted at trial. What do you claim was specifically precluded from evidence? Well, as you know, Your Honor, there was the first witness right out of the box was Mr. Abrams, who worked closely with Mr. Davis and would have been in the best position. There had just been a, in what struck me as a pretty definitive ruling. I'm asking what would have been. I'm asking at what points in the trial did counsel say, Your Honor, at this time I seek to admit evidence of X that you deferred decision on? Counsel did not use that language. Counsel did, however, attempt to. What did counsel seek to admit that you now claim falls under that category that was precluded? Well, during the testimony of cooperating witness Mr. Wright, who did deal at least on one occasion with Mr. Davis and dealt with the ringleader Williams, he did try to elicit evidence that Williams, who put this scheme together, that's pretty uncontested, viewed Davis as, yes, not being smart. But that was a hearsay objection that was sustained, right? Pardon me? That was a hearsay objection that was sustained. It's not because of the reasons that you're asserting now in your appellate brief. Some of it at least related to observations of Mr. Williams acting in a mocking tone, mocking physical behavior towards, with respect to Mr. Davis, including. It was hearsay because the witness was going to testify to what Williams said to him about Davis, right? But at some point, though, it was actually. Why is it that hearsay? Well, portions might theoretically have been, but other portions were actual observations and physical. What was the question? Physical mimicry. Isn't it true that Mr. Williams, you know, mocked Mr. Davis by slobbering, acting as though he drooled when he ate ice cream with the only possible. But all that goes to what Williams' views of Davis were, right, which are, again, hearsay. I mean, if the question was going to be what did you observe about Mr. Davis, that might, well, it wouldn't have been a hearsay objection. The conduct itself, I don't see how that qualifies as hearsay. This was actual physical conduct, not a statement. You know, he was literally mocking the way he perceived him. And, yes, it is important, of course, for the ringleader's interpretation of Mr. Davis' intellectual wherewithal. Let's assume you had a document that said or a witness that said he had diminished capacity, could prove somehow yet he was not smart enough to formulate intent. How is that not a diminished capacity defense which you weren't really advocating for, right? Correct. And this goes to the core function of the jury, to use their common sense, their life experience. Correct what? We were not seeking to advance a diminished capacity. I looked, I read the colloquy between trial counsel and the court, and I didn't think that counsel was asking for a diminished capacity defense. Correct? That's correct. And counsel expressly pointed out that she was not asking for that. What she was asking for.  So if he wasn't, if counsel wasn't asking for that, then what's the point? Who cares what Williams, if Williams thought your client was dumb or drooled or? Ultimately, it's what the jury thought. We've heard a lot about red flags here. And counsel used the classic example of, you know, a dopey uncle who falls for every Nigerian romance scam. And everybody knows somebody like that. And in those circumstances, the jury could have said, look, you know, this guy reminds me of people I know. I mean, he's not acting with malice. He's not acting out of greed. He's just foolish enough, credulous enough, and dopey enough, to use that language, to believe what somebody else, you know, there's plenty of testimony that he was persuasive, you know, forcefully tried to convince him of, and evidently succeeded. Your Honor, I see I'm well over the five minutes. With Your Honor's leave, if I can address sentencing during my rebuttal, that would be fine. All right. Or you could do it now, if you want to use that rebuttal time. I may as well use it now. It makes more sense. So I'm essentially giving up my rebuttal to do it now. Yeah. Okay, thank you. Mr. Davis received a 40-month sentence, well above what probation recommended, well above the average sentence for someone with similar guidelines and a similar crime of conviction. Under the circumstances, it was both procedurally and substantively unreasonable. The court assigned the loss amounts for both Watson and Wright, even though the evidence showed there was only a single meeting. It was really more out of convenience for the doctor than any indication that these people worked together, knew each other other than as former professional basketball players. They sort of just showed up at the same place at the same time at the instruction of Williams and Anderson, kitted around with words to the effect of, oh, you're here too. Look at that. There was at least some evidence that there was, in fact, medical consultation that took place. Reasonable minds could disagree as to how thorough it was. But ultimately, this was not the kind of case that the court likened it to, where four individuals agreed to split up a kilo of cocaine, let's just say. Okay, we're each going to take this, we're each going to sell it individually, and we're going to split up the proceeds accordingly. There was never any agreement among these people. There's no evidence of discussion as to, okay, you're getting this much, you're filing these papers. But the issue is whether it was perceivable, right? Correct. And so Mr. Davis had basically said, no, I went alone to the doctor, and then it came out at trial that actually he and three others went to the doctor and that they even discussed what they were doing, which supported then a conclusion that, yeah, it was perceivable that all four of these guys were doing the same thing. So why is that not, I mean, assuming we credit that testimony, why isn't that enough to show that it was foreseeable? There's, in what way was it foreseeable, though, Your Honor? I mean, they showed up at the same time. It was only at the time they actually showed up, they said, oh, you're here too. I don't see how that rises to the level of the foreseeability, especially in the context of the numerous cases I cited in my brief, in which, yes, you have people working for a boiler room, everybody knows that, yeah, there's some sort of scheme going on here, and, yes, I have a generalized idea that others are doing the same thing I'm doing, but ultimately the court found that, the court in those cases found that that was not sufficiently foreseeable. Well, I mean, the testimony was that Mr. Davis had confided that he had done this before, and then he was with the three other players where they had a conversation outside of the doctor's office in the parking lot where they joked about the whole thing. Even a statement that I have done this before is too vague and is not sufficiently clear for anybody to understand, okay, we're all in this criminal scheme together. Likewise, the joking about it, everything about it, I mean, as my colleague pointed out, these are people who did not have a huge amount of financial sophistication. They basically did what they were told by their handlers, and they showed up and ultimately said, this whole thing is crazy. So the sentencing judge didn't credit that characterization, right? The sentencing judge seemed to conclude that Mr. Davis was more culpable because he expanded the conspiracy, he brought another doctor into it, that he was quite sophisticated. So the district court didn't have to agree that he was unsophisticated or naive. That is clearly what happened. Obviously, as Your Honor is well aware, defense counsel and Mr. Davis currently strongly contest that conclusion. But yes, that was the ruling. Thank you, Your Honors. Okay, well, thank you. We will now hear from Mr. Finkel on behalf of the government. Good morning, Your Honors. May it please the Court, my name is Ryan Finkel. I represent the government on this appeal, as I did at the trial below before Judge Caproni. I'd like to start first with the Davis sort of false diminished capacity defense. Your Honors raised several questions, and I think it kind of goes to the heart of this appeal, which is what was the defendant precluded from introducing at trial? And all that the defense has pointed to, even standing here today, are those four questions that Judge Caproni did not abuse her discretion in sustaining objections to for a whole host of reasons, including form, relevance, foundation, hearsay, et cetera. And with respect to Edgar Abrams, Davis's business manager, there was questions that were admitted, or should say, objections overruled on in which Edgar Abrams discussed how Davis needed help with a whole sort of different issues. There's an exchange at approximately trial transcript page 110 that goes on for several pages about how Glenn Davis needed help filling out life insurance forms. There's an exchange in which the government objected to and Judge Caproni overruled the objection, in which defense counsel made it clear that Davis needed help filling out forms related to other issues. And that Edgar Abrams would copy Davis's girlfriend on e-mails to make sure that Davis performed the task. Those are the kinds of observations that someone about Davis's abilities could introduce at trial, and the point is that that evidence was admitted and was used during closing argument. So I think there really is no argument. There's no valid appeal that Davis was precluded from introducing this concept that he didn't have the ability to form the requisite intent, and in any event has disclaimed any diminished capacity defense. Turning to Mr. Bynum, the main argument that Bynum is making standing here today is that there wasn't a reasonable basis for a conscious avoidance instruction. There certainly was. Your Honors have already pointed out the numerous red flags. I'd also direct Your Honors to trial transcript 1523. This is Bynum's testimony in which he says, you know, now looking back at it, I feel kind of stupid that I didn't, like, thoroughly look at it, it being the invoices. Back then I had so much going on, I didn't even second guess what he was doing, he being Terrence Williams, which is to say he testified that he avoided looking at the details of the invoices. There certainly was a basis to permit a conscious avoidance instruction, and Judge Caproni was not, did not err in that respect. With respect to sentencing, there was no substantive or procedural error there. Judge Caproni made an appropriate 3553A evaluation of all the relevant factors, and with respect to reasonable foreseeability, that's really the only issue here. Whether Judge Caproni erred after presiding over the trial in finding that it was reasonably foreseeable to Davis that he was aware that these other three individuals were involved in the same conspiracy, given what took place at the Las Vegas doctor's office, and the fact that... Well, it's just one occasion, right, that's in the record? Well, there's one occasion in which they go to the doctor's office, but there is also other evidence demonstrating that all the conspirators were talking with Alan Anderson and Terrence Williams, and so by virtue of the fact that Davis was in communication with all these various people at various times, I think you can also reasonably draw an inference, which would be a proper inference, that he was aware others were involved. But yes, there was one instance in which the three of them, plus Alan Anderson, were at this doctor's office, but that's sufficient here, particularly when, after the doctor's appointment, there was testimony of this effect in which the witness, Antoine Wright, was asked, did you speak with the defendant, Glenn Davis? He answered, yes. What did you discuss? The answer, the majority of it was small talk. I asked him if he had done this before. Question, what do you mean by this? Answer, work with Terrence Williams. And Davis went on to say, yes. It was plain, given this was an after-hours meeting at a doctor's office for a letter of medical necessity that was not medically necessary for Glenn Davis, given all of these factors, Davis clearly... was involved, and there was no error in what Judge Caproni determined with respect to sentencing. And unless the Court has any further questions, government otherwise rests on its submission. All right. Thank you, Mr. Finkel. We'll now hear from Mr. Adams for two minutes of rebuttal. Thank you, Your Honor. With respect to the government's argument that Mr. Bynum's testimony showed that he avoided looking at these invoices, the court of testimony was now looking back. So based on the facts known to him at the time of trial, shouldn't be imputed to him at the time that the events in this case occurred. No, but, I mean, I guess if he's conceding that this is something that should have put him on notice, doesn't that get you halfway to a conscious avoidance charge? I think he's looking at it, again, based on the evidence that it was now known to him at the time of the trial, time preparing for trial, not at the time... Well, I mean, he's still disputing whether it was conscious, I suppose, his avoidance. I don't think he did it for more innocent reasons, but, you know, it seems to me, to the extent that these are red flags, he effectively conceded as much on the stand, didn't he? So Judge Respectfully would disagree that he conceded as much. I think he's saying, based on the spot he's in now at trial, at the time of trial, years after this occurred, he is now looking and says, yes, I probably should have. But he also has testified that he did look at these invoices. He glanced at them, I believe, was the exact testimony. He glanced at them on his phone, and they looked good enough to him, and he thought that Williams was working for the Players Association. He thought they were legitimate, and Williams asking for a fee was not outside the bounds of paying for the taxes and paying for doctor's fees for these invoices. So based on those, on Bynum's subjective understanding at the time, we believe the instruction wasn't warranted, and we'd ask the Court to vacate this conviction for count two from Mr. Bynum and remand to the district court. If there's no further questions, I would rest on my brief. All right. Well, thank you all. We will reserve decision. Thank you.